IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

HUGO ROMERO,                    )
                                )
        Petitioner,             )
                                )
v.                              )       Civil Action No. 3:25-cv-00788-HEH
                                )
JEFF CRAWFORD, *et al.*,        )
                                )
        Respondents.            )
                                )

**MEMORANDUM OPINION**
**(Granting Petition for § 1226(a) Bond Hearing)**

THIS MATTER comes before the Court on Hugo Romero's ("Petitioner") Amended Petition for a Writ of Habeas Corpus and Complaint for Declaratory and Injunctive Relief (Verified) ("the Petition," ECF No. 7). Petitioner is a federal detainee with counsel and has paid the full filing fee. (*Id.*) Petitioner has filed this Petition against the Respondents, five government officials in their official capacity (collectively "the Government"),[1] with the named Defendant being Jeff Crawford, the Warden of the Farmville Detention Center where Petitioner is currently being held. Through this Petition the Petitioner seeks a bond hearing pursuant to 8 U.S.C. § 1226(a). The Government responded to the Petition on December 5, 2025, to which Petitioner replied on December 15, 2025. (Gov't's Opp'n, ECF No. 10;

---

[1] All five Defendants include, Jeff Crawford, Russell Hott, Field Office Director of the Washington Field Office of Enforcement and Removal Operations, U.S. Immigrations and Customs Enforcement; U.S. Department of Homeland Security; Todd M. Lyons, Acting Director, Immigration and Customs Enforcement, U.S. Department of Homeland Security; Kristi Noem, U.S. Department of Homeland Security; and Pamela Bondi, Attorney General of the United States.

Pet'r's Reply, ECF No. 11.)  For the reasons contained herein, the Court will grant the Petition.

## I. BACKGROUND

Petitioner Hugo Romero is a citizen of Guatemala who has physically resided in the United States since 2014.  (Pet. at 1.)  Upon information and belief, Immigration and Customs Enforcement ("ICE") officers apprehended him "at or near his worksite" on August 16, 2025.  (*Id.*)  Petitioner works in construction for his uncle.  (*Id.*)  By his own admission he is a noncitizen—i.e. an alien pursuant to 8 U.S.C. § 1101(a)(3))—and likens himself to other "noncitizens who entered the United States without admission or parole." (Reply at 1.)  Petitioner is currently detained at the Farmville Detention Center in Farmville, Virginia.  Petitioner contends that he should not be considered an "'applicant for admission' who is 'seeking admission'" within the meaning of the Immigration and Nationality Act ("INA"), specifically § 1225.  (Pet. at 2.)  Given his current physical residence within the United States, he instead contends that he should be detained pursuant to 8 U.S.C. § 1226(a), which allows for release on conditional parole or bond.  (*Id.* ¶¶ 1–5.)  In accordance with the Bureau of Immigration Appeals' precedential decision in *Matter of Yajure Hurtado*, the Government now seeks to subject Petitioner to mandatory detention pursuant to § 1225(b)(2)(A).  (Gov't's Opp'n at 17, citing *Yajure Hurtado*, 29 I. & N. Dec. 216, 224 (BIA 2025).)  The Government does not argue in its defense that the Petitioner has failed to exhaust his administrative remedies.  Accordingly, the Court will proceed to the merits without analyzing that issue.  (Gov't's Opp'n at 1, n.1.)

Two statutes within the INA principally govern the detention of noncitizens pending removal proceedings: 8 U.S.C. § 1225 and § 1226.  Under § 1225, "in the case of an alien

who is an applicant for admission, if the examining officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for a proceeding under section 1229a of this title." § 1225(b)(2)(A). By contrast, 8 U.S.C. §1226 governs the removal procedures for aliens "present in the country," and gives the Attorney General discretion to release an alien on bond pending a removal decision. *Jennings v. Rodriguez*, 583 U.S. 281, 288 (2018). Unlike § 1225, the text of § 1226 contains no reference to aliens who are "applicants for admission" or "seeking admission."

DHS revised its legal position on mandatory detention pursuant to § 1225(b)(2)(A) on July 8, 2025. *Martinez v. Hyde*, 792 F. Supp. 3d 211, 217 (D. Mass. July 24, 2025). The Government now applies § 1225 to all applicants for admission. (Reply at 1.) The Supreme Court has acknowledged and expressly declined to rule on the competing interpretations of § 1225. *Biden v. Texas*, 597 U.S. 785, 807 (2022) ("we need not and do not resolve the parties' arguments regarding whether section 1225(b)(2)(A) must be read in light of traditional principles of law enforcement discretion, and whether the Government is lawfully exercising its parole authorities pursuant to sections 1182(d)(5) and 1226(a)"). Three Justices appear to favor the Government's interpretation of § 1225(b)(2)(A). *Biden*, 597 U.S. at 817 (Alito, J., dissenting).

The majority of district courts which have considered this issue have concluded § 1226 applies in these circumstances. *Pizarro Reyes v. Raycraft*, No. 25-CV-12546, 2025 WL 2609425, at *4 (E.D. Mich. Sept. 9, 2025); *see also Lopez-Arevelo v. Ripa*, No. EP-25-CV-337-KC, 2025 WL 2691828, at *7 (W.D. Tex. Sept. 22, 2025); *Rodriguez v. Bostock*, No. 3:25-cv-5240, 2025 WL 2782499, at *1 & n.3 (W.D. Wash. Sep. 30, 2025); *Belsai D.S. v. Bondi*, No. 25-cv-3682, 2025 WL 2802947, at *6 (D. Minn. Oct. 1, 2025); *Soto v. Soto, et*

3

*al.*, No. 25-cv-16200, 2025 WL 2976572, at *8 (D.N.J. Oct. 22, 2025) (collecting cases

rejecting the Government's interpretation). Various other courts around the country have

sided instead with the Government's position in this case.[2] *Coronado v. Sec'y, Dep't of*

*Homeland Sec.*, No. 1:25-CV-831, 2025 WL 3628229, at *6 (S.D. Ohio Dec. 15, 2025);

*Chavez v. Noem*, 3:25-cv-02325, 2025 WL 2730228, at *5 (S.D. Cal. Sept. 24, 2025); *Vargas*

*Lopez v. Trump*, No. 8:25CV526, 2025 WL 2780351, at *7 (D. Neb. Sept. 30, 2025).

Several courts in the Eastern District of Virginia have rejected the Government's position.[3]

We join our colleagues, albeit on different legal grounds. Accordingly, the Court will grant

Petitioner's Petition for a bond hearing pursuant to § 1226(a). This is a close case, and the

Court will detail its reasoning at length to justify its conclusion.

## II. ANALYSIS

### A. Admission

#### i. The Texts of § 1225 and § 1226

"We begin, as always, with the text" of the statute at hand. *Esquivel-Quintana v.*

*Sessions*, 581 U.S. 385, 391 (2017). Section 1225(a)(1) expressly states that "[a]n alien

present in the United States who has not been admitted ... shall be deemed for purposes of

this Act an applicant for admission." §1225(a)(1). "In interpreting statutory texts courts use

the ordinary meaning of terms unless context requires a different result." *Gonzales v.*

---

[2] Notably, the Government has appealed a case with very similar facts which is now under consideration by the Eighth Circuit. *Jose J.O.E. v. Bondi*, 797 F. Supp. 3d 957 (D. Minn. 2025).
[3] *Duarte Escobar v. Perry*, No. 3:25CV758, 2025 WL 3006742 E.D. Va. Oct. 27, 2025); *Hasan v. Crawford*, 800 F. Supp. 3d 641 (E.D. Va. 2025 Sept. 19, 2025); *Quispe v. Crawford*, No. 1:25-cv-1471 (AJT), 2025 WL 2783799 (E.D. Va. Sept. 29, 2025); *Quispe-Ardiles v. Noem*, No. 1:25-cv-01382 (MSN), 2025 WL 2783800 (E.D. Va. Sept. 30, 2025); *Singh v. Lyons*, No. 1:25-cv-01606 (AJT), 2025 WL 2932635 (E.D. Va. Oct. 14, 2025); *Hernandez v. Crawford*, No. 1:25-cv-01565 (AJT), 2025 WL 2940702 (E.D. Va. Oct. 16, 2025).

*Carhart*, 550 U.S. 124, 152 (2007). The Supreme Court has repeatedly interpreted the language of §1225 and §1226, specifically the meaning of "admission" as it is understood in the context of the INA and as modified by the 1996 Illegal Immigration Reform and Immigrant Responsibility Act ("IIRIRA"). *Vartelas v. Holder*, 566 U.S. 257, 260–62 (2012); *Jennings*, 583 U.S. at 289; *Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 108 (2020).

As the Supreme Court wrote in a unanimous opinion, "[l]awful status and admission, … are distinct concepts in immigration law: Establishing one does not necessarily establish the other." *Sanchez v. Mayorkas*, 593 U.S. 409, 415 (2021). "Procedure, and not substance, is determinative of an 'admission' into the United States," and "[t]he text, structure, and history of the statute confirm that the terms 'admission' and 'admitted' as used in [§] 1101(a)(13)(A) [] refer[s] to inspection and authorization by an immigration officer at the port of entry." *Bracamontes v. Holder*, 675 F.3d 380, 387 (4th Cir. 2012). As the Supreme Court writes, "an alien who tries to enter the country illegally is treated as an 'applicant for admission.'" *Thuraissigiam*, 591 U.S. at 140 (citing § 1225(a)(1)).

The Supreme Court's rulings allow only one plausible conclusion: that all aliens who are physically within the United States but lack lawful status are "applicants for admission" within the meaning of § 1225. There is no ambiguity on this point. Numerous Supreme Court decisions make it clear that "admission" refers to inspection and lawful granting of entry of an alien into the United States by an immigration officer. As explained by Justice Ginsburg, writing for the Court in *Vartelas v. Holder*, "admission" within the meaning of the IIRIRA refers to "the *lawful* entry of the alien into the United States *after inspection and authorization* by an immigration officer." 566 U.S. at 262 (emphasis added); *see also*

5

*Lopez-Sorto v. Garland*, 103 F.4th 242, 251 (4th Cir. 2024). Therefore, an alien who has

entered the United States unlawfully is not admitted to the United States, irrespective of the

time they have physically remained in the territorial United States following their unlawful

entry. The Fourth Circuit has similarly written that "'an alien who tries to enter the country

illegally is treated as an applicant for admission' and therefore does not have the same status

for due process purposes as an alien who has 'effected an entry.'" *United States v. Guzman*,

998 F.3d 562, 569 (4th Cir. 2021) (quoting *Thuraissigiam*, 591 U.S. at 140). Petitioner

Romero entered the United States unlawfully and has resided here without legal status since

2014. He does not contest this. (Reply at 1.) He is therefore clearly not legally "admitted"

to the United States. *See also Azumah v. United States Citizenship & Immigr. Servs.*, 107

F.4th 272, 283, n.11 (4th Cir. 2024) (Richardson, concurring).

Next, § 1225(a)(1) expressly defines that "[a]n alien present in the United States who

has not been admitted ... shall be deemed for purposes of this Act an applicant for

admission." § 1225(a)(1); *Thuraissigiam*, 591 U.S. at 109. Justice Alito reaffirms this

understanding of admittance writing for the majority in *Jennings v. Rodriguez*.

583 U.S. at 287 ("Under § 1225, an alien who ... 'is present' in this country but 'has not

been admitted,' is treated as 'an applicant for admission.'") (cleaned up). Additionally, we

know from other Supreme Court writings that other facets of immigration law allow aliens to

physically reside and even work within the United States without being admitted. For

instance, Justice Kagan, writing for a unanimous Court in *Sanchez v. Mayorkas*, writes that

"[t]he [Temporary Protected Status] program gives foreign nationals nonimmigrant status,

but it does not admit them." 593 U.S. at 414. Congress may enact immigration statutes

which grant noncitizens lawful status while they simultaneously "do not constructively

'admit' a [noncitizen]—that is, 'consider[ ]' him as having entered the country 'after inspection and authorization.'" *Id.* (quoting § 1254a(f)(4); § 1101(a)(13)(A)).

Section 1225 is not ambiguous as to who is an applicant for admission. § 1225(a)(1). The Court is perplexed that Petitioner has not readily admitted that he is an applicant for admission under § 1225. *Jennings*, 583 U.S. at 287; *Thuraissigiam*, 591 U.S. at 109. Petitioner is an alien unlawfully within the United States and has not been inspected by an immigration officer for admission; therefore, he "shall be deemed ... an applicant for admission" as defined by § 1225. *Accord Duarte Escobar v. Perry*, No. 3:25CV758, 2025 WL 3006742, at *8 (E.D. Va. Oct. 27, 2025). Because this conclusion is unambiguously supported by the text of § 1225, as interpreted by the Supreme Court, this Court need not refer to other sources of statutory interpretation, which may prove useful when a text is instead ambiguous.

### B. Present

#### i. The Texts of § 1225 and § 1226

It does not automatically follow that because Petitioner Romero is an applicant for admission that he is also subject to mandatory detention under § 1225, as opposed to discretionary detention under § 1226. Petitioner contends that even if he is an applicant for admission, he is not "seeking admission" to the United States, which he cites as a requirement for § 1225 to apply in this case. Since Petitioner contends he is not "seeking admission," he is therefore not subject to § 1225's mandatory detention requirements. (Pet. at 2.)

Which are the best interpretations of § 1225 and § 1226 is a close question. This Court does not find that the purported "seeking admission" prong of § 1225 carries the

7

determinative force assigned by the Petitioner.[4]  The dispositive question here is the proper

interpretation of the word "present" as used in federal immigration statutes and various

Supreme Court opinions interpreting those statutes.  Section 1226(a) sets forth "the default

rule" for detaining and removing aliens "already present in the United States." *Jennings*, 583

U.S. at 303.  The text of § 1226 makes no mention whatsoever of "applicants for admission."

§ 1226.  Many courts rely upon the Supreme Court's decision in *Jennings*, citing it for the

proposition that § 1225 governs "aliens seeking admission into the country" whereas § 1226

governs "aliens already in the country" who are subject to removal proceedings.  *Hasan v.*

*Crawford*, No. 1:25-CV-1408 (LMB/IDD), 2025 WL 2682255, at *8 (E.D. Va. Sept. 19,

2025) (citing  583 U.S. at 289); *Campos-Flores v. Bondi*, No. 3:25CV797, 2025 WL

3461551, at *4, n.13 (E.D. Va. Dec. 2, 2025) (collecting cases).  This Court has a narrower

reading of *Jennings*.  *Jennings* itself, which is presently the most authoritative existing

interpretation of  the texts of § 1225 and § 1226, is ambiguous as to whether it is referring to

those aliens "already [physically] present" or alternatively those aliens "already [lawfully]

present." 583 U.S. at 303.  Either interpretation is plausible as discussed further below.

### ii. Government's Interpretation

The Government puts forward many good reasons for justifying the application of

§ 1225 to those applicants for admission who, like Petitioner Romero, are not lawfully

present in the United States.  The Government is correct that its interpretation of § 1225 does

---

[4] The Government has put forward a convincing argument that the "otherwise" language of
§ 1225(a)(3) indicates that being an "applicant for admission" is one way of "seeking
admission," rather than these being separate and distinct requirements.  Were we to instead adopt
the Petitioner's interpretation of § 1225, we would be forced to render the word "otherwise" in
1225(a)(3) a nullity.  (Gov't's Resp. at 7–8.)  Sections 1225(a)(4–5) also contain language
supporting the Government's interpretation of "seeking admission."

not render any part of § 1226 superfluous. (Gov't's Resp. at 14.) Section 1226(c) specifies that "any alien" who meets its criteria shall be subject to its conditions. As defined by Congress, "'alien' means any person not a citizen or national of the United States." § 1101(a)(3). Those who are lawful permanent residents of the United States, who in turn possess legal status, continue to be aliens. *Azumah*, 107 F.4th at 274, 281 (4th Cir. 2024). Those noncitizens granted asylum or granted Temporary Protected Status are also aliens. *Sanchez*, 593 U.S. at 412; *see also Vartelas*, 566 U.S. at 262–63 ("lawful permanent residents returning post-IIRIRA … [may] be required to 'see[k] an admission' into the United States, without regard to [the characteristics of] the alien's departure."). Therefore, under the Government's interpretation, § 1226 can still be applied to "aliens … who have been convicted of certain criminal offenses *since admission*." *Jennings*, 583 U.S. at 288. (emphasis added); *see also Othi v. Holder*, 734 F.3d 259, 264 (4th Cir. 2013) (quoting § 1101(a)(13) ("'[a]n alien lawfully admitted for permanent residence in the United States is [generally] not treated as one seeking 'admission'")); *and see Azumah*, 107 F.4th at 274 ("while [an] LPR may be paroled into the United States at the discretion of the Attorney General, that parole does not constitute an 'admission' under the INA."); *and see Chavez v. Noem*, 3:25-cv-02325, 2025 WL 2730228, at *5; *8 (S.D. Cal. Sept. 24, 2025) ("[a]s long as those individuals [such as lawful permanent residents] have not been charged with the specific crimes listed in § 1226(c), they remain subject to the discretionary detention provisions of § 1226(a).").

The Government's position is also supported by several interpretative factors which go beyond the plain text of § 1225 and § 1226. Legislative history supports the Government's position. Prior to IIRIRA, an "anomaly" existed "whereby immigrants who

were attempting to lawfully enter the United States were in a worse position than persons who had crossed the border unlawfully." *Torres v. Barr*, 976 F.3d 918, 928 (9th Cir. 2020). The IIRIRA is widely recognized, both at the time of its enactment and in the years since, as intended to rectify this anomaly. *Othi*, 734 F.3d at 264. While courts "are not free to replace [clear statutory language] with an unenacted legislative intent," the language of these statutes is not clear. *I.N.S. v. Cardoza-Fonseca*, 480 U.S. 421, 453 (1987) (Scalia, J., concurring). The fact that the Government's position better reflects this widely recognized goal of the IIRIRA cautions the Court against a quick embrace of Petitioner's interpretation.

More significant is the widely recognized fact that "[T]he power to admit or exclude aliens is a sovereign prerogative" of the political branches. *Landon v. Plasencia*, 459 U.S. 21, 32 (1982) "[T]he immigration statutes afford substantial discretion to the Executive [and] different Presidents may exercise that discretion differently. That is Administrative Law 101." *Biden*, 597 U.S. at 815 (Kavanaugh, J., concurring). The Court heeds Justice Kavanaugh's admonition that "[n]othing in the relevant immigration statutes at issue [§ 1182; § 1225] suggests that Congress wanted the Federal Judiciary to improperly second-guess the President's Article II judgment with respect to American foreign policy and foreign relations." *Id.* at 816.

Indeed, one good reading of § 1225 and § 1226, which the *Jennings* Court discusses, is that

> U.S. immigration law authorizes the Government to detain certain aliens seeking admission into the country under §§ 1225(b)(1) and (b)(2). It *also* authorizes the Government to detain certain aliens already in the country pending the outcome of removal proceedings under §§ 1226(a) and (c).

*Jennings*, 583 U.S. at 289 (emphasis added.)  An alien can be both "seeking admission" into the country and "already in the country" at the same time.  *Vartelas*, 566 U.S. at 262; *Sanchez*, 593 U.S. at 416–417 ("nothing in § 1184 (or any other section [of the INA]) states that admission is a prerequisite of nonimmigrant status"); *Azumah*, 107 F.4th at 274.  In turn, this may be a case where the "best reading of a statute is that it delegates discretionary authority to an agency," and where the only role of the Court is to "independently interpret the statute and effectuate the will of Congress subject to constitutional limits."  *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 395 (2024).  The *Jennings* Court's use of "also" in the quoted language plausibly indicates that the President retains the discretion to decide whether to treat non-admitted aliens physically and unlawfully present in the United States as subject to § 1225 *or alternatively* as subject to § 1226.  In other words, § 1225 and § 1226 may be statutes which "afford substantial discretion to the Executive," the kind of discretion "which different Presidents may exercise [] differently."  *Biden*, 597 U.S. at 815 (Kavanaugh, J., concurring).  This reading accords with both *Jennings'* discussion of these statutes and the deference owed to the "President's Article II judgment."  *Id.*

### iii. Petitioner's Interpretation

While the Government's interpretation has considerable merit, the Court ultimately holds that the Petitioner has the better interpretation of § 1225 and § 1226.  While much of the text and legislative history of  § 1225 indicate that it is best read to apply generally to all unlawfully present applicants for admission, doing so would raise constitutional problems which the Supreme Court has yet to address.  *Biden*, 597 U.S. at 807.  Namely, accepting the Government's interpretation of  § 1226 could potentially contravene the Supreme Court's holding in *Zadvydas v. Davis*, which states that "[T]he Due Process Clause applies to all

11

'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." 533 U.S. at 693. In *Zadvydas*, the Court limited the detention of unlawfully present aliens "to a period reasonably necessary to bring about that alien's removal from the United States." *Id.* In other words, once a person is physically within the borders of the United States, regardless of legality, they are guaranteed at least some constitutional rights. Even while dissenting in *Zadvydas*, Justice Scalia agreed that aliens unlawfully present in the United States enjoy some basic constitutional liberties. *Id.* at 704 (Scalia, J., dissenting).

The Supreme Court subsequently held in *Dep't of Homeland Security v. Thuraissigiam* that "[a]n alien who is detained shortly after unlawful entry cannot be said to have 'effected an entry,'" and therefore does not gain the protection of the Constitution's Due Process Clause. 591 U.S. at 105 (2020). The *Thuraissigiam* Court made it clear that an alien apprehended twenty-five yards past the United States border is not to be considered within the physical borders of the country. *Id.* That same opinion did not specify precisely when an illegal entrant attains constitutional due process rights. Notably, the *Thuraissigiam* Court did not limit its holding to *only* those aliens "detained shortly after unlawful entry." *Id.* The petitioner in that case was detained shortly after entry, but the Court's holding may still apply long after an alien has effected an unlawful entry. *See Biden*, 597 U.S. at 817 (Alito, J., dissenting). The scope of *Thuraissigiam* is uncharted territory.

Petitioner has been detained in an ICE facility since August 16, 2025—nearly five months. (Pet. at 1.) The Court makes no determination in this case as to whether Petitioner should be released on bond, whether he can or should be removed, and when he should be removed. Given, however, that he has unlawfully lived physically within the United States

for over a decade and that he has already been detained for a significant period of time, *Zadvydas* and *Thuraissigiam* lead this Court to conclude that he is entitled to the protections of the Due Process Clause, and that he is accordingly entitled to a § 1226(a) bond hearing. (Pet. at 1.) Accepting the Government's interpretation of § 1225 would force the Court to conclude that unlawfully but physically present aliens may be detained for long periods of time without a bond hearing. While the Government's interpretation is not technically at odds with the plain language of *Thuraissigiam*, the Court needs a clearer statement from a higher court to conclude that this length of detention without a bond hearing is permitted by the Constitution. As things now stand, this case is in uncharted territory. Out of respect for the judiciary's role in safeguarding constitutional liberties, and caution at the prospect of wrongly denying an individual the protection of those liberties, the Court finds that Petitioner is entitled to a bond hearing under § 1226(a). Petitioner is therefore entitled to a bond hearing pending a decision on his removal.

### III. CONCLUSION

For the reasons states, the Court will GRANT Petitioner Hugo Romero's Amended Petition for a Writ of Habeas Corpus and Complaint for Declaratory and Injunctive Relief (Verified). (ECF No. 7.)

An appropriate Order will follow this Memorandum Opinion.

/s/

Henry E. Hudson
Senior United States District Judge

Date: January 13, 2026
Richmond, Virginia

13